UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| | * | |
| PATRICIA O'GRADY, individually and as | * | |
| Executrix of the Estate of JOHN W. | * | |
| PARSELS, | * | |
| | * | |
| Plaintiff, | * | Civil Action No. 1:19-cv-11814-ADB |
| | * | |
| v. | * | |
| | * | |
| SAFETY-KLEEN SYSTEMS, INC., | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO REMAND

BURROUGHS, D.J.

In this wrongful death action, Plaintiff Patricia O'Grady ("O'Grady"), as the widow of John W. Parsels ("Parsels") and the executrix of his estate, alleges that Defendant Safety-Kleen Systems, Inc. ("Safety-Kleen") knowingly included carcinogens in its automobile parts solvents and cleaners, and that Parsels' exposure to Safety-Kleen products ultimately caused his death. [ECF No. 1-2 ("Am. Compl.") ¶ 5].

Presently before the Court are Safety-Kleen's motion to dismiss, [ECF No. 8], and O'Grady's motion for remand to state court, [ECF No. 17]. For the following reasons, Safety-Kleen's motion to dismiss, [ECF No. 8], is DENIED, and O'Grady's motion for remand, [ECF No. 17], is DENIED in part and GRANTED in part, insofar as O'Grady requests jurisdictional discovery.

## I.    FACTS AS ALLEGED

For the purposes of this motion, the facts are drawn from the amended complaint and evidence the parties have proffered in support of their jurisdictional arguments.  Safety-Kleen manufactures, recycles, leases, and services "automobile parts washers and solvents" nationwide. [ECF No. 28 at 2; ECF No. 29-1 at 3].  Safety-Kleen is incorporated in Wisconsin, [ECF No. 28 at 2; ECF No. 1-3 at 1], and is registered as a foreign corporation in Massachusetts.  [ECF No. 1-3 at 1].

On December 28, 2012, Safety-Kleen was acquired by Clean Harbors, Inc. ("Clean Harbors").  [ECF No. 28 at 3].  Clean Harbors is a "holding company organized in the Commonwealth of Massachusetts with the sole function of owning a multitude of subsidiaries." [ECF No. 28 at 3].  According to Safety-Kleen, Clean Harbors does not have any of its own employees.  [ECF No. 29-1 at 4].  It "operates a 'shared services' model for the various entities it owns."  [ECF No. 28 at 3].  Under this model, Safety-Kleen and "its corporate siblings" share with Clean Harbors "certain executive operational components" such as the "location for corporate and tax-related filings . . ."  [ECF No. 28 at 3; ECF No. 29-1 at 4].

O'Grady is, and Parsels was, a resident of Florida.  [ECF No. 22 at 5; Am. Compl. ¶ 3]. Parsels routinely used Safety-Kleen's solvents and cleaners for automobile parts throughout his career as an auto mechanic in Florida and also for his "automotive restoration hobby work." [Am. Compl. ¶¶ 14–20].  O'Grady claims that Safety-Kleen's solvents and cleaners contained carcinogens, such as aromatic hydrocarbons, and that Parsels' exposure to these carcinogens caused him to be diagnosed with myelodysplastic syndrome in 2008 and acute myelogenous leukemia in 2017, resulting in his death on May 11, 2017.  [Am. Compl. ¶ 5].  O'Grady now

asserts various causes of action against Safety-Kleen, including product liability, breach of warranty, unfair trade practices, negligence, wrongful death, and loss of consortium.  [Id.].

## II.     PROCEDURAL HISTORY

O'Grady originally filed her complaint in Plymouth County Superior Court on May 10, 2019.  [ECF No. 1-1.].  Safety-Kleen was served on July 25, 2019, and removed the case to this Court on August 23, 2019, asserting jurisdiction pursuant to 28 U.S.C. § 1332.  [ECF No. 1 at 1].

On August 30, 2019, Safety-Kleen filed a motion to dismiss the complaint, [ECF No. 8], claiming, inter alia, that the company was not subject to suit in Massachusetts for the claims asserted therein.  O'Grady filed her opposition on September 27, 2019.  [ECF No. 22].  In the meantime, O'Grady filed a motion to remand to state court on September 23, 2019.  [ECF No. 17].  Safety-Kleen opposed the motion to remand on October 23, 2019.  [ECF No. 28].

## III.    SAFETY-KLEEN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.     Standard of Review

O'Grady bears the burden of establishing that jurisdiction exists over Safety-Kleen.  A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (noting that a plaintiff bears the burden of establishing jurisdiction over a defendant) (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).  "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima facie' standard governs its determination."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  Under the prima facie standard, the plaintiff must proffer "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."  A Corp., 812 F.3d at 58 (quoting Prairie Eye Ctr., 530 F.3d at 26).  "[P]laintiffs may not rely on unsupported allegations in their pleadings," and are instead "obliged to adduce evidence of specific facts"

supporting jurisdiction.  Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992), then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).  The Court takes as true whatever properly documented facts a plaintiff proffers, construes those facts in the light most favorable to the plaintiff, and considers facts put forward by the defendant to the extent they are uncontradicted.  See Prairie Eye Ctr., 530 F.3d at 26; Platten, 437 F.3d at 134.

**B.    Discussion**

O'Grady has seemingly staked her entire claim on the theory that a Massachusetts court would be able to exercise general jurisdiction over Safety-Kleen.  [Am. Compl. ¶ 1].  She does not allege that this Court may exercise specific personal jurisdiction over Safety-Kleen, and there is no apparent support for such in any case.  If this Court can exercise general jurisdiction, however, the case will have to be remanded to Massachusetts Superior Court, as Safety-Kleen would then have its principal place of business in Massachusetts and thereby qualify as a citizen of Massachusetts, with the result that the case cannot be removed to federal court.  See 28 U.S.C § 1441(b); Mass. Gen. Laws ch. 223A, § 2; Daimler AG v. Bauman, 571 U.S. 117, 137 (2014).

"To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (citing Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).  The Due Process Clause of the Fourteenth Amendment allows a state court to exercise personal jurisdiction over a nonresident only where the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted).

The Massachusetts long-arm statute also limits when courts may exercise personal jurisdiction over nonresidents.  Because "the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question."  SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017); see also Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) ("The requirements of the Massachusetts long-arm statute are similar to—although not necessarily the same as—those imposed by the Due Process Clause.").

### C.     Massachusetts' Long-Arm Statute

O'Grady asserts that because Safety-Kleen is a resident of Massachusetts, the Court has personal jurisdiction over it under Mass. Gen. Laws ch. 223A, § 2, which allows a court to "exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, this commonwealth as to any cause of action."  Mass. Gen. Laws ch. 223A, § 2; [Am. Compl. ¶ 1].  O'Grady also argues that Parcels "was first injured by the wrongful acts and/or negligent conduct of the Defendant in [Plymouth County, Massachusetts]," [Am. Compl. ¶ 1], seemingly invoking Massachusetts General Laws ch. 223A, § 3(c), which provides personal jurisdiction over a non-resident defendant where the defendant "acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . causing tortious injury by an act or omission in this commonwealth . . . ."  Mass. Gen. Laws ch. 223A, § 3(c).

Safety-Kleen denies that its principal place of business is in Massachusetts and asserts that none of the eight grounds for personal jurisdiction over a non-resident defendant under

Massachusetts General Laws ch. 223A, § 3 subject Safety-Kleen to suit in Massachusetts.[1]  [ECF No. 9 at 6–7].

Because O'Grady only relies on Massachusetts General Laws ch. 223A, § 2 and § 3(c) to establish this Court's personal jurisdiction over Safety-Kleen, the Court will only evaluate O'Grady's arguments pursuant to those sections of the Massachusetts long-arm statute.

1.  <u>Massachusetts General Laws ch. 223A, § 2: Domicile, Organization, or Place of Business in the Commonwealth</u>

Under Massachusetts General Laws ch. 223A, § 2, a court may "exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, this commonwealth as to any cause of action."  Mass. Gen. Laws ch. 223A, § 2.  Here, because Safety-Kleen is organized under the laws of Wisconsin, [ECF No. 1 at 2; ECF No. 1-3 at 1], it would have to maintain its principal place of business in Massachusetts for this court to be able to exercise personal jurisdiction under ch. 223A, § 2.

O'Grady argues that Safety-Kleen maintains its principal place of business in Norwell, Massachusetts, thus making personal jurisdiction appropriate under ch. 223A, § 2.  [ECF No. 22 at 3–4; Am. Compl. ¶ 1].  Safety-Kleen responds that its principal place of business is in

---

[1] Safety-Kleen expands upon Mass. Gen. Laws ch. 223A §§ 3(a)–3(e), which respectively cover jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's" (a) "transacting any business in the commonwealth," (b) "contracting to supply services or things in this commonwealth," (c) "causing tortious injury by an act or omission in this commonwealth," (d) "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth," (e) "having an interest in, using or possessing real property in this commonwealth[.]"  Mass. Gen. Laws ch. 223A, § 3; [ECF No. 9 at 6–7].  As noted by Safety-Kleen, the three other grounds deal with "insurance contracts, divorce/marital law, and child/support/alimony" and are not relevant here.  Mass. Gen. Laws ch. 223A §§ 3(f), 3(g), 3(h); [ECF No. 9 at 5 n.2].

Richardson, Texas, such that it is not subject to suit in Massachusetts under ch. 223A, § 2. [ECF No. 9 at 5].

At this time, for the reasons discussed in greater detail below, see infra Section IV.B.4, the Court is unable to ascertain the location of Safety-Kleen's principal place of business and therefore, on the record before it, cannot determine whether the requirements of ch. 223A, § 2 have been met.

2. Massachusetts General Laws ch. 223A, § 3(c): Causing Tortious Injury by Act or Omission in the Commonwealth

Under Massachusetts General Laws ch. 223A, § 3(c), a court may "exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . causing tortious injury by an act or omission in this commonwealth . . . ." Mass. Gen. Laws ch. 223A, § 3(c). A plaintiff must "demonstrate[] that the alleged tortious injury occurred in Massachusetts." Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 959 F. Supp. 36, 39–40 (D. Mass. 1997), aff'd, 142 F.3d 26 (1st Cir. 1998). See, e.g., Mello v. K-Mart Corp., 604 F. Supp. 769, 771–72 (D. Mass. 1985) (finding that the court lacked jurisdiction where injury occurred in Tennessee, despite the fact that the plaintiff returned to Massachusetts for treatment); Mulcahy v. Guertler, 416 F. Supp. 1083, 1084 (D. Mass. 1976) (finding no jurisdiction where injury occurred in North Carolina); see also Crocker v. Hilton Int'l Barbados, Ltd., 976 F.2d 797, 799–800 (1st Cir. 1992) (finding that the court lacked jurisdiction under ch. 223A, § 3(d) where the injury occurred in Barbados, despite the plaintiffs suffering the effects of the injury in Massachusetts). Plaintiffs must therefore allege that defendants took some action in Massachusetts that caused the plaintiffs to be injured in Massachusetts. See Roy v. Fed Ex Ground Package Sys., Inc., No. 3:17-cv-30116, 2018 WL 2324092, at *6 (D. Mass. May 22, 2018) ("The court will assume without deciding that a

violation of the FLSA causes a tortious injury. Notwithstanding this assumption, [the plaintiff] has not made out a prima facie case for the applicability of section 3(c) where there are no facts before the court that [the defendant] took any action with respect to [the plaintiff] in Massachusetts.").

"The 'arising from' clause in [the long-arm statute] is . . . generously construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test." Workgroup Tech. Corp. v. MGM Grand Hotel, LLC., 246 F. Supp. 2d 102, 112 (D. Mass. 2003). The inquiry asks whether "the defendant's contacts with the Commonwealth constitute the first step in a train of events that result[ed] in the . . . injury." Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (internal quotation marks omitted) (quoting Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 114 (1st Cir. 1997)).

Here, O'Grady has not alleged that Safety-Kleen's contacts with Massachusetts formed "the first step in a train of events" that caused the injuries or even that any of the alleged injuries took place in Massachusetts. Parsels, a citizen of Florida, [ECF No. 22 at 5–6], was exposed to Safety-Kleen's products while working in Florida and received treatment for his illnesses in Florida and Minnesota. [Am. Compl. ¶¶ 5, 14–20]. Beyond the vague allegation that the injury was caused in Plymouth County, O'Grady does not allege that either she or Parsels were injured in Massachusetts or even that they have ever visited Massachusetts. At most, O'Grady identifies Massachusetts as Safety-Kleen's principal place of business, which implies that at least some of Safety-Kleen's corporate activity took place here. [ECF No. 22 at 3–4; Am. Compl. ¶ 1]. Such a vague assertion, however, does not meet O'Grady's burden of establishing that this Court may properly exercise personal jurisdiction over Safety-Kleen.

Accordingly, O'Grady has failed to establish that this Court has jurisdiction under Massachusetts General Laws ch. 223A, § 3(c).

**D.    Due Process Clause**

If the Court were to eventually find that Safety-Kleen had its principal place of business in Massachusetts and that the long-arm statute was thereby satisfied, it would next have to determine whether it could exercise jurisdiction consistent with the Due Process Clause of the Fourteenth Amendment.  See Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).  Courts may exercise two types of personal jurisdiction under the Fourteenth Amendment: general or specific. See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088–89 (1st Cir.1992) (distinguishing the two types of personal jurisdiction).  Under specific personal jurisdiction, the plaintiff's claim "must be related to the defendant's contacts."  Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005).  Under general personal jurisdiction, "in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state."  Id.  Either type of personal jurisdiction is sufficient.  See Massachusetts Sch. of Law, 142 F.3d at 34.

    1.    Waiver

Safety-Kleen asserts that the Court lacks both general and specific jurisdiction to hear this case.  [ECF No. 9 at 9–10].   Although O'Grady has not specified whether she is relying on general or specific personal jurisdiction, [ECF No. 22 at 3–4; Am. Compl. ¶ 1], the Complaint's reference to Massachusetts General Laws ch. 223A, § 2, which deals with jurisdiction over a party that maintains its principal place of business in Massachusetts, suggests that she is asserting general jurisdiction.  See Mass. Gen. Laws ch. 223A, § 2 ("A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his

or its principal place of business in, this commonwealth as to any cause of action."); see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011) (explaining that the state in which a corporation's principal place of business is located has general personal jurisdiction over the corporation); [Am. Compl. ¶ 1]. As O'Grady has not asserted any basis that would allow this Court to find that it could exercise specific jurisdiction over Safety-Kleen, the Court will regard any argument as to specific jurisdiction as waived. See Henderson v. Laser Spine Inst., 815 F. Supp. 2d 353, 367–68 (D. Me. 2011) (holding that plaintiff, who argued that "only specific jurisdiction exist[ed]" waived assertions of general jurisdiction) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation 'to spell out its arguments squarely and distinctly, or forever hold its peace.'")); Newman v. European Aeronautic Def. & Space Co. Eads N.V., 700 F. Supp. 2d 156, 163 (D. Mass. 2010) ("Because the specific jurisdiction argument . . . is not plead, it has been waived."). Even if the Court were to consider specific jurisdiction, the allegations in the Complaint are insufficient to establish that the Court could properly exercise specific jurisdiction over Safety-Kleen. Given the waiver, the Court would normally end the discussion of specific jurisdiction here. But because, as will be seen, a finding of specific jurisdiction is the only way for this court to retain jurisdiction over this case, the Court will continue with the analysis in hopes of informing the parties' next steps.

2.     Specific Jurisdiction

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Swiss Am. Bank, Ltd., 274 F.3d at 618 (quoting Massachusetts Sch. of Law, 142 F.3d at 34). For the Court to have specific jurisdiction over Safety-Kleen consistent with the Due Process Clause, the plaintiff would have to demonstrate that each of the following three conditions is satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

Daynard v. Ness, 290 F.3d 42, 60 (1st Cir. 2002) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, F.3d 138, 144 (1st Cir. 1995)).

### i. Relatedness

To satisfy the relatedness requirement, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." Foster-Miller, Inc., 46 F.3d at 144. "The relatedness standard is a 'flexible, relaxed standard,' which focuses on the 'nexus between the defendant's contacts and the plaintiff's cause of action.'" Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) (first quoting Pritzker, 42 F.3d at 61, then quoting Ticketmaster-N.Y., 26 F.3d at 206). The requirement "falls between proximate and 'but for' causation, with foreseeability shaping most relatedness determinations." Micheli v. Techtronic Indus., No. 11-cv-10503, 2012 WL 6087383, at *9 (D. Mass. Mar. 1, 2013) (citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715–16 (1st Cir. 1996)).

O'Grady brings tort claims related to an alleged product defect. Accordingly, the Court's inquiry focuses "on whether [Defendant's] contacts with Massachusetts relate to the sale or marketing of the product causing [Plaintiff's] injury." Lewis v. Dimeo Const. Co., No. 14-cv-10492, 2015 WL 3407605, at *4 (D. Mass. May 27, 2015) (noting that relatedness would be satisfied in a product defect case where defendant introduced an injury-causing product to market, "ensure[d] a distribution network . . . in Massachusetts," provided training to employees in Massachusetts, and "tested product prototypes in Massachusetts"); see also Katz v. Spiniello Companies, 244 F. Supp. 3d 237, 245 (D. Mass. 2017) (holding that the relatedness requirement

was not met where manufacturer of allegedly defective product "never manufactured, . . . marketed, [or] sold" the product in Massachusetts, despite the fact that manufacturer was registered in Massachusetts as a foreign corporation, rented space in Massachusetts, and had Massachusetts employees).

Here, it is unclear whether O'Grady's claims would be sufficiently related to Safety-Kleen's forum-state activities. First, the Court reiterates that O'Grady has not argued that the injury occurred in Massachusetts. Second, neither party has offered evidence on Safety-Kleen's sales structure or marketing apparatus, aside from Safety-Kleen noting the residence of certain of its executive officers. [ECF No. 28 at 2; ECF No. 29-1 at 3]. O'Grady's bare assertion that Safety-Kleen's principal place of business is in Massachusetts does little to illuminate whether the activities of Safety-Kleen that would be relevant to this inquiry took place in Massachusetts. Furthermore, Safety-Kleen avers that its principal place of business is Richardson, Texas, that Texas is the location of such executives as the Vice President of Manufacturing, the Vice President of Marketing, the Vice President for Planning, the Vice President of Product Development, the Senior Vice President of Supply Chain, the Vice President of Strategic Initiatives, and the Senior Vice President Controller, [ECF No. 28 at 2; ECF No. 29-1 at 3], and that these individuals are "operational executives tasked with the direction, control, and coordination of its solvent business" as well as its "finances." [ECF No. 28 at 2]. Given Safety-Kleen's assertions about the executive functions of its business and the corresponding lack of evidence offered by O'Grady, it is altogether possible that the relevant activities for present purposes occurred in Richardson, Texas, rather than in Massachusetts. As such, O'Grady has failed to meet her burden of establishing the relatedness of her claims to Safety-Kleen's forum-state activities.

ii.       Purposeful Availment

For jurisdiction to be proper, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 61 (citation omitted). "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 112 (1987). Purposeful availment requires "[a]dditional conduct" demonstrative of a defendant's "intent or purpose" to serve the market in the forum. Id. "Additional conduct" includes, among other things, "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id.

Here, neither party has submitted evidence as to: (1) the location of the design, manufacture, or marketing of Safety-Kleen's products, (2) the structuring of Safety-Kleen's sales operations in Massachusetts, if any, or (3) any "additional conduct" by Safety-Kleen that would establish Safety-Kleen's purposeful availment of the law of Massachusetts. O'Grady, without more, argues that "Defendant has purposefully availed itself of the privileges and benefits of conducting business in Massachusetts." [Am. Compl. ¶ 1]. Safety-Kleen, on the other hand, asserts that its activities in Massachusetts "do[] not rise to the level of purposeful availment," as it derives less than two percent of its total revenues from Massachusetts and employs less than two percent of its national workforce within Massachusetts. [ECF No. 9 at 13]. However, "the question is not whether a defendant sells its product across the U.S.; it is instead whether a

defendant's forum connection is such 'that the exercise of jurisdiction is essentially voluntary and foreseeable.'"  Knox v. MetalForming, Inc., 914 F.3d 685, 692 (1st Cir. 2019) (quoting Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018) (citing Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174, 179 (5th Cir. 2013) (upholding the exercise of jurisdiction based on substantial in-forum sales, even though the defendant's forum sales represented less than two percent of its nationwide sales during the relevant period)).  Nevertheless, while it is possible that Safety-Kleen's sales operations and other conduct may show that Safety-Kleen has purposefully availed itself of the laws of Massachusetts, O'Grady has failed to bring any such conduct to the attention of this Court.  Accordingly, O'Grady has failed to meet her burden of establishing that Safety-Kleen has purposefully availed itself of the privilege of conducting activities in Massachusetts so as to satisfy the requirements of the Due Process Clause in relation to the exercise of specific jurisdiction.

iii.    Reasonableness

The First Circuit has identified the following "Gestalt factors" to guide the reasonableness inquiry: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  Pritzker, 42 F.3d at 63–64 (quoting 163 Pleasant St., 960 F.2d at 1088).

First, with regard to the defendant's burden of appearing, the Court finds that the burden on Safety-Kleen would not be significant.  Because defending an action in a foreign jurisdiction "is almost always inconvenient and/or costly," "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden."  Id.  Safety-Kleen does not allege anything

"special or unusual" concerning its burden of appearing in Massachusetts.  See id. (noting that "[i]n the modern era, the need to travel . . . creates no especially ponderous burden").

Second, Massachusetts' interest in ensuring its own citizens have an effective forum to seek compensation for personal injuries by adjudicating this dispute does not apply in this case where Plaintiff is a Florida citizen.  See id.; Doucet v. FCA US LLC, No. 19-cv-10514, 2020 WL 128655, at *7 (D. Mass. Jan. 10, 2020); [ECF No. 22 at 5; Am. Compl. ¶ 3].  The second factor is therefore of neutral weight.

The third factor, Plaintiff's convenience, is also of neutral weight.  O'Grady originally filed this action in Massachusetts Superior Court. [ECF No. 1-1].  Generally, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience."  Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995).  The Court notes, however, that where the plaintiff is a Florida resident, Massachusetts does not appear to be particularly convenient, which could make the exercise of jurisdiction less reasonable.  The Court will, however, "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience."  Saeed v. Omex Sys., Inc., No. 16-cv-11715, 2017 WL 4225037, at *7 (D. Mass. Sept. 22, 2017) (quoting Ticketmaster-N.Y., 26 F.3d at 211).

Fourth, the judicial system's interest in obtaining the most effective resolution of the controversy weighs against the exercise of personal jurisdiction.  Courts in this district have found that litigating in the forum state does not provide the most effective relief when necessary evidence and witnesses are located outside of the forum.  Mueller Sys., LLC v. Robert Teti & Itet Corp., 199 F. Supp. 3d 270, 279–80 (D. Mass. 2016).  Here, O'Grady lives outside of Massachusetts and claims that witnesses are located in Florida, Minnesota, and at various corporate locations of Safety-Kleen, including Illinois and California.  [ECF No. 22 at 6].  If

Safety-Kleen's principal place of business is located outside of Massachusetts, it is possible that "no witnesses or documents relevant to the suit are located in Massachusetts." Mueller Sys., LLC, 199 F. Supp. 3d at 279–80. Even if some evidence or witnesses are in Massachusetts, this does little to change the analysis, particularly when the parties are all located outside of the state.

Fifth, the common interests of all sovereigns in promoting substantive social policies may afford the exercise of jurisdiction in Massachusetts some weight, insofar as Massachusetts has an interest in "ensuring that products sold within its borders are safe for use by consumers," but the stronger interest that Massachusetts has in protecting its citizens is absent where, as here, the plaintiff is a citizen of another state. See Nowak, 94 F.3d at 718–19 (considering a state's interest in protecting its citizens in assessing this factor).

Taken in total, the Gestalt factors are of neutral weight and do not support exercising specific personal jurisdiction in this case. The Court therefore lacks specific personal jurisdiction over Safety-Kleen and could only exercise jurisdiction if Safety-Kleen were subject to general personal jurisdiction in Massachusetts.

### 3. General Jurisdiction

"[G]eneral jurisdiction requires affiliations 'so "continuous and systematic" as to render [a person] essentially at home in the forum State.'" Daimler AG v. Bauman, 571 U.S. at 133 n.11 (quoting Goodyear, 564 U.S. at 919). In Daimler AG v. Bauman, the Supreme Court explained that, with respect to a corporate defendant, "the place of incorporation and principal place of business are paradig[matic] . . . bases for general jurisdiction." Id. at 137.

The parties disagree as to whether Safety-Kleen maintains its principal place of business in Texas or in Massachusetts. [ECF No. 22 at 3–4; ECF No. 9 at 2]. The resolution of this issue will determine the fate of this case. If Safety-Kleen does maintain its principal place of business

in Massachusetts, then Safety-Kleen would be "at home" in Massachusetts for the purposes of

establishing general jurisdiction under Daimler. 571 U.S. at 117. But, if Safety-Kleen was "at

home" in Massachusetts, then removal to federal court was improper under 28 U.S.C.

§ 1441(b)(2), which prevents a defendant who is a citizen of the state in which an action is

brought from removing to a federal district court in that state. [2]  28 U.S.C § 1441(b). Regardless,

because the Court currently lacks the information necessary to determine Safety-Kleen's

principal place of business, it is unable to determine if it may exercise general jurisdiction over

Safety-Kleen.

---

[2] Safety-Kleen contends that O'Grady's motivation for remanding to Massachusetts state court
may involve the respective statutes of limitations for wrongful death suits in Massachusetts and
Florida, where O'Grady resides and where Parsels resided. [ECF No. 22 at 5]. Safety-Kleen
notes that, in Florida, the statute of limitations for a wrongful death suit is two years, while the
corresponding statute of limitations for a wrongful death suit in Massachusetts is three years.
See Fla. Stat. § 95.11(4)(d); Mass. Gen. Laws ch. 229, § 2; [ECF No. 9 at 14]. Parsels passed
away on May 11, 2017, and O'Grady filed suit on May 10, 2019. [Am. Compl. ¶ 5]. The
amended complaint has therefore sufficiently alleged that the claim is timely under
Massachusetts law to survive a motion to dismiss on statute of limitations grounds. The ultimate
determination of whether O'Grady's claims are timely under either Massachusetts or Florida law
could involve determining things such as when Parcels first became aware that he had been
injured by Safety-Kleen's products or whether the 2008 myelodysplastic syndrome diagnosis and
the 2017 acute myelogenous leukemia diagnosis were part of a single disease or two separate and
distinct diseases, both of which are factual issues to be determined at summary judgement or by
a jury. See Uffner v. Philip Morris USA Inc., 46 F. Supp. 3d 1339, 1345 (M.D. Fla. 2014)
("Accrual begins for a latent or creeping disease caused by long-term exposure to a product
when 'the accumulated effects of the deleterious substance manifest themselves to the claimant
in a way which supplies some evidence of [a] causal relationship to the manufactured product.'"
(quoting Carter v. Brown & Williamson Tobacco Corp., 778 So. 2d 932, 937 (Fla. 2000)));
Evans v. Lorillard Tobacco Co., 990 N.E.2d 997, 1028 (Mass. 2013) (explaining that a claim
accrues and the statute of limitations commences in Massachusetts when a plaintiff knew or
should have known "that she has been harmed or may have been harmed by the defendant's
conduct"). See also Evans, 990 N.E.2d at 1028 ("[W]hen a later-discovered disease is separate
and distinct from an earlier-discovered disease, the earlier disease does not trigger the statute of
limitations for a lawsuit based on the later disease." (quoting Pooshs v. Phillip Morris USA, Inc.,
250 P.3d 181 (Cal. 2011))). "[T]he question of when the statute of limitations begins to run in
this type of case is 'generally treated as [a] fact question[] for a jury to resolve, and therefore
inappropriate for resolution on a summary judgment or directed verdict.'" Carter, 778 So. 2d at
937 (citation omitted).

## IV.    O'GRADY'S MOTION FOR REMAND TO STATE COURT

O'Grady contends that removal was improper because Safety-Kleen is a citizen of Massachusetts, and thus unable to remove to a Massachusetts federal district court under 28 U.S.C. § 1441(b).  [ECF No. 18 at 1].  As more fully set forth below, to enable the Court to determine Safety-Kleen's principal place of business, O'Grady's Motion for Remand is GRANTED, insofar as O'Grady requests jurisdictional discovery.

### A.    Standard of Review

The party asserting federal jurisdiction bears the burden of establishing it.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182–83 (1936)).  A removal statute does not create federal jurisdiction.  Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).  Accordingly, when a defendant seeks to remove an action filed in state court to a federal court, the defendant must establish that the federal court has original jurisdiction over the case.  See 28 U.S.C. §§ 1441(a), 1446(a); Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010); In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig., 76 F. Supp. 3d 321, 326 (D. Mass. 2015) ("As the removing parties, Defendants bear the burden of establishing federal jurisdiction.").  Removal statutes are "strictly construed and any doubts about the propriety of removal are resolved in favor of remand to the state forum."  Danca, 185 F.3d at 4 (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)); Fresenius, 76 F. Supp. 3d at 327.

For diversity jurisdiction to arise under 28 U.S.C. § 1332(a), the parties must be completely diverse and the amount in controversy must be more than $75,000.  Fresenius, 76 F. Supp. 3d at 326.  For a state court case that is removed to federal court, diversity of citizenship is determined "at the date of removal instead of the date on which the complaint was filed."

Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 40 (1st Cir. 2016) (citing Casas Office Mach., Inc. v. Mita Copystar America, Inc., 42 F.3d 668, 673 (1st Cir. 1994)).  Where the civil action is "removeable solely on the basis of [diversity] jurisdiction under 28 U.S.C. § 1332(a)," the action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

**B.      Discussion**

Though neither party disputes that the amount in controversy exceeds the required $75,000, the parties disagree as to whether there is diversity jurisdiction.  [ECF No. 1 at 3; ECF No. 18 at 2–3].  Specifically, the parties agree that O'Grady is a citizen of Florida, but dispute the corporate citizenship of Safety-Kleen.  [ECF No. 9 at 2, 11; ECF No. 22 at 4].  Safety-Kleen asserts that it is a Wisconsin corporation with its principal place of business in Richardson, Texas.  [ECF No. 28 at 2].  O'Grady, on the other hand, argues that Safety-Kleen is a Wisconsin corporation with its principal place of business in Norwell, Massachusetts.  [ECF No. 18 at 3].

O'Grady's arguments center around several representations made by Safety-Kleen in documents filed in Massachusetts, Wisconsin, and Texas.[3]  [ECF No. 22 at 3–4].  First, O'Grady argues that Safety-Kleen's principal place of business is in Massachusetts because Safety-Kleen provides a Norwell, Massachusetts, address within a number of documents, including its: (1) 2019 Annual Report with the Secretary of the Commonwealth of Massachusetts, (2) Dallas Central Appraisal District account information, (3) Texas franchise tax public information reports, and (4) corporate records with the Wisconsin Department of Financial Institutions.

---

[3] Safety-Kleen takes issue with O'Grady's position on this issue, claiming that O'Grady's counsel has litigated against Safety-Kleen in a number of past suits where he has asserted that Safety-Kleen's principal place of business is Texas.  [ECF No. 28 at 4–5].

[ECF No. 22-2 at 9; ECF No. 22-4 at 1; ECF No. 22-3 at 9; ECF No. 22-1 at 1]. Second, O'Grady asserts that Safety-Kleen's principal place of business is in Massachusetts because Safety-Kleen, in its "Business Entity Summary" filed with the Secretary of the Commonwealth of Massachusetts, lists six of its seven named officers as having Massachusetts addresses.[4] [ECF No. 1-3 at 1–2; ECF No. 18 at 3].

Safety-Kleen replies that a number of the officers listed in the "Business Entity Summary" are in fact officers of Clean Harbors and not Safety-Kleen. [ECF No. 28 at 12]. Specifically, four of the listed officers[5] "provide services to all subsidiaries of Clean Harbors . . . ." [ECF No. 29-1 at 4; ECF No. 1-3 at 1].[6] Additionally, Safety-Kleen argues that "none of the individuals on the business entity form . . . have any particular operational or administrative control over Safety-Kleen's solvent, parts-washers, oil services, fluid recovery services, infrastructure, and/or day-to-day operations" which form the "centerpiece of all of Safety-Kleen's business operations." [ECF No. 29-1 at 5].

---

[4] Specifically, while Safety-Kleen's president, Mr. David Vergo, is listed with an address at 2600 North Central Expressway, Ste. 400, Richardson, TX 75080, Safety-Kleen's Treasurer, Assistant Secretary, Vice President, and two Directors are listed at the 42 Longwater Drive, Norwell, MA 02061 address, and Safety-Kleen's secretary is listed at One Boston Place, Boston, MA, 02108. [ECF No. 1-3 at 1–2]. One of these officers, Mr. Michael Battles, is listed twice within the form as both Vice President and Director. [Id. at 2].

[5] These officers are Mr. Gregory Malerbi, the Treasurer, Mr. Michael McDonald, the Assistant Secretary, Mr. Michael Battles, the Vice President, and Mr. Eric Gerstenberg, the Director. [ECF No. 29-1 at 4].

[6] Mr. Bradley also claims that David Vergo, listed as Safety-Kleen's President in the "Business Entity Summary," recently resigned and had "previously worked out of Richardson, Texas" and also that C. Michael Malm, the Secretary, is "outside counsel for Clean Harbors and is not an employee of any Clean Harbors entity." [ECF No. 29-1 at 5; ECF No. 1-3 at 1].

According to Safety-Kleen, these "centerpiece" operations are handled in Richardson, Texas, [ECF No. 29-1 at 3, 5], and Texas is the location of the "operational executives tasked with the direction, control, and coordination of its solvent business" as well as its "finances."[7] [ECF No. 28 at 2]. Allegedly, neither Safety-Kleen's Board of Directors nor its shareholders meet in Massachusetts. [ECF No. 29-1 at 3].

Despite Safety-Kleen's arguments that its principal place of business is in Texas rather than in Massachusetts, O'Grady asserts that Safety-Kleen has not established "the location of its principal place of business with proof" and has thus failed to meet its burden to show that there is diversity jurisdiction. [ECF No. 28 at 2; ECF No. 18 at 3]. O'Grady also argues that she is entitled to discovery on the question of Safety-Kleen's corporate citizenship. [ECF No. 17 at 2].

1.    Corporate Citizenship

A corporation is considered to be the citizen of "every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ." 28 U.S.C. § 1332(c). In Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010), the Supreme Court defined "principal place of business" as the corporation's "nerve center," or "the place where a corporation's officers direct, control, and coordinate the corporation's activities." See also Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 41–42 (1st Cir. 2016) (explaining that a corporation's principal place of business is located where owners, though perhaps "hands off in day-to-day decisions," "exercise[d] 'ultimate' control over" the corporation by setting "policy

---

[7] Among these individuals are: (1) and (2) Executive Vice Presidents "who have broad responsibilities," (3) the Vice President of Blending, (4) the Vice President of Manufacturing, (5) the Vice President of Marketing, (6) the Vice President for Planning, (7) the Vice President of Product Development, (8) the Senior Vice President of Supply Chain, (9) the Vice President of Strategic Initiatives, (10) the Vice President for Technical and Quality Assurance, (11) the Senior Vice President Controller, and (12) the Senior Vice President of Internal Audit. [ECF No. 28 at 2; ECF No. 29-1 at 3].

and goals"); Fresenius, 76 F. Supp. 3d at 327 (principal place of business located where "headquarter[], legal and accounting functions" occurred and where chief executive maintained office).

The "nerve center," however, cannot be established by "the mere filing of a form like the Securities and Exchange Commission's Form 10–K" that "list[s] a corporation's 'principal executive offices . . . .'" Hertz, 559 U.S. at 97. Likewise, the "representations" made by a corporation in its "annual reports or . . . documents filed with a secretary of state that indicate the location of a corporate headquarters" are not "bind[ing]" on a court seeking to determine a corporation's principal place of business. Trans. & Storage Sols. Inc. v. KLT Indus., Inc., No. 13-cv-40137, 2014 WL 5320174, at *3 (D. Mass. Oct. 17, 2014) (noting that public records that indicate a corporation's "business address" are "insignificant to diversity jurisdiction for the purposes of 28 U.S.C. § 1332").

## 2. Parent-Subsidiary Identity

Where corporations are involved in parent-subsidiary relationships, the distinct corporate identities of the parent and subsidiary "should be honored when determining either one's principal place of business" unless there is "evidence that the integrity of the corporate form has been violated." Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 61 (1st Cir. 1993); see also de Walker v. Pueblo Int'l, Inc., 569 F.2d 1169, 1172–73 (1st Cir. 1978) (citing Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 335 (1925)). The "critical factual question" is often "not the degree of control the parent exercised over the subsidiary, but whether the two businesses preserved their separate corporate identities." Taber, 987 F.2d at 62. Accordingly, the separate corporate identity of a subsidiary will be recognized "even if the parent corporation exerts a high degree of control through ownership or otherwise, and even if the separateness is perhaps only

formal" so long as the "corporate separation is real and carefully maintained." U.S.I. Props. Corp. v. M.D. Const. Co., 860 F.2d 1, 7 (1st Cir. 1988); see also Topp v. CompAir Inc., 814 F.2d 830, 837 (1st Cir. 1987) ("[T]he fact that a parent corporation exercises the control which is necessarily incident to the full ownership of its subsidiary is insufficient, without more, to justify ignoring the separate corporate entities.").

When determining the principal place of business of a corporation involved in a parent-subsidiary relationship where corporate formalities have been observed, it is the "activities of the company whose citizenship is at issue . . . that are relevant." Taber, 987 F.2d at 62. To evaluate whether a parent and subsidiary corporation have maintained their separate corporate identities, courts look to five factors to determine whether the two corporations: (1) are "separately incorporated," (2) have "separate boards of directors," (3) "keep separate accounting and tax records," (4) "have separate facilities and personnel," and (5) have separate bank accounts. Russell v. Enter. Rent-A-Car Co. of Rhode Island, 160 F. Supp. 2d 239, 252 (D.R.I. 2001) (citing de Walker, 569 F.2d at 1171); see also Rivera Sanchez v. MARS, Inc., 30 F. Supp. 2d 187, 191 (D.P.R. 1998) (listing factors) (citing Topp, 814 F.2d at 837).

### 3. Safety-Kleen as a Separate Corporate Entity

Based on the record, the Court is unable to determine whether the relationship between Safety-Kleen and Clean Harbors violates the corporate form and thereby deprives Safety-Kleen of its separate existence under the five factors. While the parties have presented evidence that Safety-Kleen and Clean Harbors are separately incorporated and that Safety-Kleen and Clean Harbors appear to share facilities and personnel, it is unclear whether the parties have separate boards of directors, keep separate accounting and tax records, or have separate bank accounts.

First, Safety-Kleen's incorporation in Wisconsin establishes that Safety-Kleen and Clean Harbors are separately incorporated.  [ECF No. 28 at 3; ECF No. 22-1 at 1].  While neither party has presented evidence on the incorporation of Clean Harbors, the evidence presented is sufficient to establish that Safety-Kleen is incorporated as its own entity.

Second, it is unclear whether the boards of Safety-Kleen and Clean Harbors are in fact separate.  Safety-Kleen's Annual Reports do not shed light on the identities of its Board of Directors, and the identities of the members of Clean Harbor's Board of Directors are similarly unclear.  See [ECF No. 22-2 at 9].  It is therefore, on the current record, not possible to determine whether the two entities possess separate boards of directors.

Third, while Safety-Kleen's 2018 Texas Franchise Tax Public Information Report indicates that Safety-Kleen is taxed separately from Clean Harbors, the issue of whether Safety-Kleen and Clean Harbors keep separate accounting and tax records remains unclear.  [ECF No. 22-3 at 9].  Safety-Kleen admits that it shares with Clean Harbors "certain executive operational components" such as the "location for corporate and tax-related filings,"  [ECF No. 28 at 3; ECF No. 29-1 at 4], but the extent to which these "executive operational components" indicate the presence or absence of separate accounting and tax records is uncertain.  Overall, the evidence submitted by the parties does not indicate whether Safety-Kleen and Clean Harbors keep "separate accounting and tax records," and it is therefore not clear to this Court whether this third factor has been met.

Fourth, Safety-Kleen and Clean Harbors appear to share both office space and officers.  Though Safety-Kleen asserts that four of the officers listed on its "Business Entity Summary" are officers of Clean Harbors and not Safety-Kleen, these officers have held themselves out to be officers of Safety-Kleen by being named in Safety-Kleen's "Business Entity Summary."  [ECF

No. 29-1 at 4]. As such, it can be argued that they are officers of both Safety-Kleen and Clean Harbors. Further, as it is unclear whether the Massachusetts officers are in fact Safety-Kleen and/or Clean Harbors officers, and given that one of Safety-Kleen's Vice Presidents works in Massachusetts, it is possible that Safety-Kleen shares facilities with Clean Harbors. [ECF No. 29-1 at 5]. While a parent and subsidiary can maintain separate office spaces within the same facility, no evidence has been presented on this point. See Topp, 814 F.2d at 833, 836–37 (noting that parent had its own "executive offices" where, while subsidiary owned office facility shared by parent and subsidiary, the parent's offices "were designated as such and constituted a distinct portion of the building"). While it is unclear whether Safety-Kleen and Clean Harbors share facilities, it appears likely that Safety-Kleen and Clean Harbors do share officers.

Fifth, neither party has offered any evidence as to whether Safety-Kleen and Clean Harbors maintain separate bank accounts. As such, the Court is unable to determine whether the entities have separate accounts.

Overall, the Court is unable to determine whether Safety-Kleen and Clean Harbors have sufficiently maintained separate corporate identities for the purposes of establishing Safety-Kleen's principal place of business in a diversity jurisdiction inquiry.

4.    Safety-Kleen's Principal Place of Business

On the record before the Court, Safety-Kleen has not established that its principal place of business is in Richardson, Texas, rather than in Norwell, Massachusetts. Although O'Grady points to several documents in which Safety-Kleen has listed Massachusetts addresses, these documents do not on their own establish that Safety-Kleen's principal place of business is in Massachusetts. [ECF No. 18 at 3]; Trans. & Storage Sols. Inc., 2014 WL 5320174, at *3 (citing Harris v. Black Clawson Co., 961 F.2d 547, 550 (5th Cir. 1992)). The Court gives little weight

to representations made by Safety-Kleen in its Annual Report that six of its seven officers are based in Norwell, Massachusetts, or its use of a Norwell address in the Massachusetts, Texas, and Wisconsin documents.  Trans. & Storage Sols. Inc., 2014 WL 5320174, at *3 (noting that "receipt of mail and details of online listings . . . are not useful in determining the location of [the] corporate nerve center") (citing Hertz, 559 U.S. at 97); [ECF No. 22-2 at 9; ECF No. 22-4 at 1; ECF No. 22-3 at 9; ECF No. 22-1 at 1].

On the other hand, however, Safety-Kleen has also not demonstrated that Richardson, Texas is the location where its "officers direct, control, and coordinate the corporation's activities."  Hertz, 559 U.S. at 92–93.  While Safety-Kleen asserts that "Richardson, Texas is where Safety-Kleen's overall business strategy, policies, and goals are managed," it offers little proof of this other than listing a series of officers who work out of Richardson, Texas.  [ECF No. 29-1 at 3, 5; ECF No. 28 at 2].  Though Safety-Kleen lists six officers as being located in Massachusetts in its "Business Entity Summary," it claims that "none" of the officers listed "have any particular operational or administrative control over Safety-Kleen's solvent, parts-washers, oil services, fluid recovery services, infrastructure, and/or day-to-day operations" which Safety-Kleen describes as the "centerpiece of all of Safety-Kleen's business operations."  [ECF No. 29-1 at 5].  Rather, Safety-Kleen asserts that these "centerpiece . . . business operations," as well as its finances, are managed in Richardson, Texas, by twelve of Safety-Kleen's Executive and Senior Vice Presidents.  [ECF No. 29-1 at 3, 5].  The fact that a series of officers may work out of a particular location is insufficient to establish that the location is the corporation's "nerve center," especially where, as here, the location of the corporation's most senior officers is not known to the Court.  See Trans. & Storage Sols. Inc., 2014 WL 5320174, at *4 (explaining that a corporation's principal place of business is located where (1) president and corporate officers

performed duties, and corporation (2) "maintained business records," and (3) "processed all financial transactions"). As such, the Court is unable to determine the location of Safety-Kleen's "nerve center."

While "determining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry," a district court "retains 'broad discretion in determining whether to grant jurisdictional discovery.'" Blair v. City of Worcester, 522 F.3d 105, 110–11 (1st Cir. 2008) (quoting Swiss Am. Bank, Ltd., 274 F.3d at 626 ); Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001).[8]

The Court lacks the information necessary to determine whether it has jurisdiction over this case. In particular, the Court is unable to determine the location of Safety-Kleen's principal place of business. Therefore, the Court finds that jurisdictional discovery is warranted, and grants O'Grady's motion for remand to the extent it requests limited discovery for the purpose of determining Safety-Kleen's principal place of business.[9] If Safety-Kleen's principal place of business is found to be in Massachusetts, removal to federal court was improper under 28 U.S.C. § 1441 and the case will be remanded to Massachusetts Superior Court. Alternatively, if Safety-Kleen does not have its principal place of business in Massachusetts, the case will be dismissed for lack of personal jurisdiction.

---

[8] The Blair v. City of Worcester decision concerned the denial of an evidentiary hearing on a Rule 12(b)(5) motion for insufficient service of process. 522 F.3d at 110. That court noted, however, that it was citing to cases that addressed "dismissal pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction or Rule 12(b)(2) for lack of personal jurisdiction" and that "the parties and district court have cited such cases interchangeably, as well." Id. at 110 n.8.

[9] O'Grady also requests discovery in her opposition to Defendant Safety-Kleen Systems, Inc.'s Rule 12(b)(2), (3), and (6) motion to dismiss. [ECF No. 22 at 4].

## V. CONCLUSION

Accordingly, the Court cannot determine whether removal to federal court was proper until it can assess whether Safety-Kleen's principal place of business is in Massachusetts. The Court shall therefore GRANT discovery on the motion to remand, [ECF No. 17], to develop a record on that point. [ECF No. 17]. The motion to dismiss, [ECF No. 8], is DENIED, with leave to renew once the court has made a finding as to whether it has general jurisdiction over Safety-Kleen. The Court notes again that if Safety-Kleen has its principal place of business in Massachusetts, then removal was improper and the case will be remanded. If Safety-Kleen's principal place of business is not in Massachusetts, then the Court lacks personal jurisdiction over it. In any event, the case will not remain before this Court. The parties may want to consider this in determining their next steps.

**SO ORDERED.**

March 30, 2020                                    /s/ Allison D. Burroughs
                                                 ALLISON D. BURROUGHS
                                                 U.S. DISTRICT JUDGE